UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Jason Altheide, Plaintiff<br>v.<br>James Dzuerda, et al., Defendants | Case No. 2:24-cv-01526-CDS-EJY<br>**Order Denying the Plaintiff's Motion for Summary Judgment, Motion for Preliminary Injunction and Motion for a Hearing, and Granting the Defendants' Cross-Motion for Summary Judgment**<br>[ECF Nos. 140, 147, 151, 156] |

Incarcerated pro se plaintiff Jason Altheide brings this civil-rights action under 42 U.S.C. § 1983. *See* Fifth am. compl., ECF No. 23. On June 17, 2026, Altheide filed a motion for summary judgment. Mot. for summ. j., ECF No. 140. The defendants filed a response, requesting that the court deny Altheide's motion and seeking a motion for summary judgment to be entered in their favor. ECF No. 151. I construe the defendants' response to be both an opposition and cross-motion for summary judgment pursuant to Rule 56(f).[1] For the reasons set forth herein, I deny Altheide's motion for summary judgment and grant the defendants' cross-motion for summary judgment.[2]

[1] Federal Rule of Civil Procedure 56(f) states that "[a]fter giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant." Fed. R. Civ. P. 56(f). I find that Altheide received adequate notice and a reasonable time to respond under Rule 56(f). Judge Youchah previously granted the defendants the opportunity to respond to his motion by July 23, 2026, and Altheide's reply in support of his motion for summary judgment was due by August 13, 2026. *See* Mins., ECF No. 146. Because Altheide filed a reply to the defendants' response and cross-motion for summary judgment, I conclude that the plaintiff "ha[d] reasonable notice," for this court to resolve defendants' cross-motion under 56(f). *See Norse v. City of Santa Cruz*, 629 F.3d 966, 971–72 (9th Cir. 2010). *See Portmouth Square, Inc. v. Shareholders Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985) (explaining where a district court grants summary judgment in the absence of a formal motion, it must be ensured that the party against whom judgment was entered had a full and fair opportunity to develop and present facts and legal arguments in support of its position).

[2] Also pending before the court is Altheide's motion for preliminary injunction. ECF No. 147. Altheide also filed a motion for a hearing on his motion for a preliminary injunction. ECF No. 156. Because the court grants the defendants' motion for summary judgment, Altheide's motions are denied as moot.

## I. Legal standard

### A. Summary judgment

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

Summary judgment proceeds in a burden-shifting step analysis. The burden starts with the moving party. A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, and other evidence which it believes shows the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden of showing the absence of a material and triable issue of fact, the burden **then** shifts to the opposing party, who must present significant probative evidence tending to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

When resolving motions for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air; rather, it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, a trial court can only consider admissible evidence in ruling on a motion for summary judgment. *Orr v. Bank of Am.*, 285 F.3d 764 (9th Cir. 2002).

**B. Administrative exhaustion**

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all available administrative remedies before filing a civil-rights action to redress alleged constitutional violations by prison staff. 42 U.S.C. § 1997e(a). The Supreme Court has interpreted the PLRA as "requir[ing] proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). Of course, "[a]n inmate need exhaust only such administrative remedies as are 'available,'" which requires that the procedures "are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016). In *Ross v. Blake*, the Supreme Court provided a non-exhaustive list of "circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643. An administrative remedy may be considered unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; or when "prison administrators thwart inmates from taking advantage of the grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44.

To succeed on a PLRA-exhaustion defense at summary judgment, the defendant must "prove that there was an available administrative remedy" that the prisoner did not exhaust; the burden then shifts to the plaintiff to provide evidence that the remedy was unavailable to him. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (cleaned up). But "the ultimate burden of proof remains with the defendant." *Id.* The trial court should grant summary judgment based on a lack of exhaustion only "[i]f undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust." *Id.*

## II. Background

### A. Evidence related to each claim

#### *1. Excessive force claim*

On October 12, 2022, Altheide was in the shower stall when correctional officer Vanessa Sierra[3] saw him kick the shower door and pull back the wire mesh. Inmate disciplinary history, Defs.' Ex. A, ECF No. 151-1 at 6. Altheide escaped the shower stall, and Sierra yelled for him to stop while holding a 40mm launcher. *Id.* Altheide ran down the stairs closest to the showers and Sierra fired one rubber round, striking Altheide in the lower portion of his body. *Id.* Sierra then reloaded a round containing OC spray, Altheide fell to his knees, and he then got up and proceeded to run toward the phones along the walls. *Id.* Sierra then fired another OC round, striking Altheide around his legs. *Id.* Altheide was ultimately restrained when multiple officers were able to utilize a state issued taser. *Id.*

#### *2. Property deprivation claim*

After arriving at Ely State Prison (ESP), Altheide was transported to the hospital on February 17, 2023. Offender movement history, Defs.' Ex. B, ECF No. 151-2 at 2–3. Altheide's medical record indicates that he was seen by a doctor for right ear pain and bleeding. Medical records, Defs.' Ex. C, ECF No. 149-1 at 8 (sealed); Discharge report, Defs.' Ex. C, ECF No. 151-3.

[3] I note for the record that Altheide brings a claim against Siera, however, the correct spelling of the defendant's last name is Sierra.

The doctor at William Bee Ririe Hospital observed that the bleeding had stopped, his hearing was intact, and Altheide's pain was still pulsating but had not worsened. *Id.* After determining that Altheide had a ruptured eardrum, the doctor prescribed Tylenol and NSAID for pain. *Id.* [4]

#### *3. Due process segregation claim*

Altheide had a due process hearing on October 17, 2022, regarding a use of force incident that took place on October 12, 2022. Case note report, Defs.' Ex. D, ECF No. 151-4 at 6. On October 18, 2022, Altheide had a full classification committee hearing. *Id.* The full classification committee determined that Altheide should be housed alone in an SMU pending the disciplinary charges from the October 12, 2022, incident. *Id.* The care in placement was set for review in thirty days. *Id.*

Another hearing was scheduled for February 22, 2023. ECF No. 151-4 at 7. Altheide refused to leave his cell and was not present during the hearing despite having been served with notice of the hearing on February 16, 2023. *Id.* Also on February 16, 2023, Altheide went into an office without permission, started to violently swing at staff, and attempted to take the staff's baton. *Id.* He was advised that, due to the severity of his actions, he was being recommended for placement under "High-Risk Prisoner" status. *Id.*

Around March 31, 2023, a monthly segregant review was conducted, and Altheide was informed that he would remain at ESP until he was removed from High-Risk Prisoner status because of his violent actions on February 16, 2023. ECF No. 151-4 at 8. Another review was conducted on May 3, 2023, which resulted in no change to Altheide's status. *Id.* Altheide continued to receive monthly reviews from June 2023 through December 2023. *Id.* at 7–9. Eventually, on September 25, 2024, a decision was made to recommend Altheide be removed from High-Risk Prisoner status. *Id.* at 13. His removal occurred on October 1, 2024. *Id.* at 14.

---

[4] Altheide's FAC alleges a property deprivation claim because he was denied further medical treatment for injuries when he objected to unlawful SMU placement. ECF No. 23 at 8. As alleged, he was ordered to board a van and was transported to the hospital on a non-emergency basis. He was subsequently charged $983.70 for treatment related to his injuries. *Id.*

B. Grievance history

*1. Excessive force claim: Grievances 2006-31-44490 and 2006-31-48105*

On October 17, 2022, Altheide filed an informal grievance (2026-31-44490), asserting that he was assaulted by a staff member with a firearm. Grievance history, Defs.' Ex. E, ECF No. 151-5 at 71. The informal grievance was returned to him on October 26, 2022, and Altheide was instructed to correct and resubmit the grievance within five days restating the factual harm/loss, action, and remedy, and attach all documents that were previously submitted. *Id.* The response to Altheide's informal grievance also explained that he failed to demonstrate that he attempted to resolve this matter prior to submitting a DOC 3091 (informal grievance). *Id.* The record reflects that Altheide did not cure the deficiencies and did not resubmit the informal grievance.

On January 23, 2023, Altheide filed a grievance (2006-31-48105), claiming excessive use of force by an officer. ECF No. 151-5 at 63. The response indicates that Altheide filed a first level grievance on December 3, 2022, and because there was no response, he was proceeding "per AR 740." *Id.* On January 27, 2023, a response was issued, rejecting the informal grievance and requesting that Altheide correct and resubmit a new grievance within five days, that was later signed by the Altheide on April 3, 2023. *Id.* Altheide did not attempt to cure the deficiencies and did not resubmit the informal grievance.

*2. Deprivation of property claim: Grievance 2006-31-53802*

On June 21, 2023, Altheide filed an informal grievance (2006-31-53802), claiming NDOC took $983.70 on April 28, 2023, for a HDSP incident that occurred between himself and the staff. *See* ECF No. 151-5 at 33. He also claims that restitution was not an authorized form of sanctions for medical cost, and he seeks the money to be returned. *See id.* A response was issued on June 30, 2023, and the informal grievance was rejected. *Id.* Altheide was advised that he failed to demonstrate that he attempted to resolve this matter prior to submitting an informal grievance, and he was instructed to correct and resubmit the grievance within five days. *Id.* Altheide did not attempt to cure the deficiencies and did not resubmit the informal grievance.

### *3. Due process segregation claim: Grievances 2006-31-45347, 2006-31-47410, 2006-31-47920, 2006-31-49769, 2006-31-49771*

On November 1, 2022, Altheide filed a grievance (2006-31-45347) where he claimed that he was not provided due process when he was moved to segregation. ECF No. 151-5 at 66. A response was issued on November 17, 2022, rejecting the informal grievance. *Id.* Altheide was instructed to correct and resubmit his grievance within five days. *Id.* Altheide signed the rejection on February 15, 2023. *Id.* At some point, Altheide filed another informal grievance, but it was rejected on November 21, 2022. *Id.* at 67. Therein, Altheide was advised of the reasons for the rejection—no harm/loss, action, or remedy; missing documents; and he failed to demonstrate that he attempted to resolve this matter prior to submitting an informal grievance. *Id.* Then, Altheide filed another grievance, but it was rejected on December 15, 2022. *Id.* at 68. Altheide did not appeal to the next level.

On December 28, 2022, Altheide filed another grievance (2006-31-47410) where he claimed that his due process hearing was held 18 days after a write up. *Id.* at 65. A response was issued on January 9, 2023, rejecting the informal grievance. *Id.* Among other things, Altheide was advised to submit one appeal to the warden using the inmate grievance processes outlined in AR 740 within 10 calendar days of the finding of guilt or UA form. *Id.* Altheide did not appeal to the next level. *Id.*

On March 13, 2023, Altheide filed another grievance (2006-31-49769), alleging that he is diagnosed with and receiving treatment for mental health issues, yet he was inappropriately classified in administrative segregation when it can only be ordered on a temporary basis per the Director of Department per AR 507.0(1)(H), AR 707.01(10)(J), OP 521. *See* ECF No. 151-5 at 56. Altheide claimed that the High-Risk Prisoner status cannot be honored. *Id.* The grievance was rejected on March 16, 2023. *Id.* In the rejection, Altheide was informed that he had a mental health evaluation on February 21, 2023, and was determined to be stable so his mental health was not considered a reason to keep him out of administrative segregation or be taken off High

Risk Prisoner status. *Id.* Altheide appealed to the first level on April 3, 2023. *Id.* at 56. On May 30, 2023, a response was issued denying Altheide's first level grievance, which informed Altheide that because he was on High-Risk Prisoner status, he was a threat to safety, making AR 507 the reason why he was in administrative segregation. *Id.* at 57. On June 17, 2023, Altheide filed a second level grievance and explained that the key word was his segregation only being temporary pursuant to AR 507 an AR 707. *Id.* A response was issued on August 10, 2023, explaining that his grievance was denied and that AR 707 does not apply because he was evaluated by mental health on February 21, 2023. *Id.*

On March 13, 2023, Altheide filed another grievance (2006-31-49771), where he argued that the 15-day required discipline hearing mandate was being "bi-passed," which I construe as ignored. ECF No. 151-5 at 53. On May 6, 2023, Altheide filed a first level grievance. *Id.* That grievance was denied on May 19, 2023. *Id.* The response explained the following to Altheide:

> Per AR 707 section 10 subsection O. The designated Preliminary Hearing Officer shall serve notice; 1) Within 15-calendar day of the date of discovery of the violation, 2) With in 15 calendar days of completion of investigative work concerning the incident; or 3) In the case of an escapee, within 15-calendar days after the escapee[']s return to NDOC custody. On 2/28/2023 Sgt Cox delivered your preliminary hearing for OIC #517032 MJ3: Battery which is 12 days from the date of the offense 2/16/2023. It should be noted that due to the severity of the OIC you were transferred the same day from High Desert State Prison to Ely State Prison causing the delay of the paperwork. OIC # 517069 MJ3: Battery occurred on 2/16/2023 and was delivered on 2/16/2023 the same day as the incident. You also allege that there was no psych evaluation done prior to the disciplinary hearing as mandated by state law. Per AR 707 section 707.1 Department Policy Subsection 10-part D. If at any stage during the hearing process, whether at the Preliminary Hearing or at the Hearing Officer stage, it is known or suspected that the offender[']s mental health or medical condition cause of the misconduct and/or that the offender is assigned to the Mental health Program, or has already been diagnosed with a Serious Mental Illness (SMI), the offender shall be referred for a psychological evaluation prior to the disciplinary hearing. The disciplinary hearing committee did in fact consult mental health and Dr. G. Davis, Psy, prior to conducting the disciplinary hearing. It was found that your misconduct and recent actions were not attributed to mental health.

ECF No. 151-5 at 53 (citations modified). On June 17, 2023, Altheide filed another first level grievance. *Id.* at 54. Around July 27, 2023, the grievance was denied because there were missing

documents. *Id.* On July 31, 2023, Altheide filed a second level grievance, which was denied on January 30, 2024. *Id.* at 55.

**C. Altheide's initiated action**

Altheide initiated this action on August 19, 2024. ECF No. 1. Altheide filed a Fifth Amended Complaint (FAC) on December 9, 2024. ECF No. 23. After screening Altheide's complaint, the court allowed the following claims to proceed: (1) Altheide's Eighth Amendment excessive force claim against Sierra; (2) Altheide's Fourteenth Amendment intentional deprivation of property claim against Dzurenda; and (3) Altheide's Fourteenth Amendment due process segregation claim against Williams, Dzurenda, Homan, Rigney, Hernandez, Cooke, Gittere, Daniels, Anakur, Prentis, Moreda, Lima, and Wesling. ECF No. 28 at 9. Altheide then filed the pending summary judgment motion, ECF No. 140.

## III. Discussion

**A. Altheide's motion for summary judgment (ECF No. 140) is denied.**

In sum, Altheide seeks summary judgment in his favor contending that "material evidence will prove the complaint." ECF No. 140 at 1. The defendants oppose Altheide's motion for summary judgment, arguing that the court should deny Altheide's motion because he fails to meet the burden for showing summary judgment is appropriate on all three of his claims. ECF No. 151 at 2. I agree. Altheide's motion fails because he does not establish there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 322. Rather, the motion only cites Federal Rule of Civil Procedure (FRCP) 56, conclusory asserts that he is basing "[his] argument upon constitutionally protected rights which [are] created . . . upon statute, regulations, and [operational] procedures." ECF No. 140 at 1 (citation modified). He also conclusively contends that these "doctrines establish and regulate defendants authority and conduct" and his "rights are also defined within these doctrines." *Id.* But conclusory assertions are insufficient for summary judgment. In fact, Rule 56(c)(1)(A) states that "[a] party asserting that a fact cannot be or is genuinely disputed **must support the**

**assertion by. . .citing to particular parts of materials in the record**, including depositions, documents, electronically stored information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials." FRCP 56(c)(1)(A). This is true even when a party proceeds pro se, like Altheide. *See Bias v. Moynihan*, 508 F.3d 1212, 1218–19 (9th Cir. 2007) ("Bias concedes that she did not present any evidence to the district court to support the claims in her amended complaint . . . . A district court does not have a duty to search for evidence that would create a factual dispute. A district court lacks the power to act as a party's lawyer, even for pro se litigants.") (citation omitted). In other words, Altheide fails to connect the allegations from his complaint to the elements of any of his legal claims. For instance, in his motion, when discussing his first claim for relief, he conclusively asserts that malicious standards are met as department regulation standards which define what authority Sierra had and her protocol prior to being allowed to shoot were breached. However, Altheide provides no evidence to support his position.[5]

Altheide fails to meet his initial burden under FRCP 56 to identify the facts necessary for the "essential elements of each claim." *InteilClear, LLC v. ETC Glob. Holdings*, Inc., 978 F.3d 653, 657 (9th Cir. 2020). The court recognizes that Altheide cites several exhibits attached to his motion, *e.g.* ECF No. 140 at 3 (citing to Pl.'s Ex. 5, 6, 9). But "the moving party also bears the burden of persuasion at trial, [so] to prevail on summary judgment it must show that the evidence is so

[5] The only case that Altheide cites in the entirety of his motion is *Ross v. Blake*, 578 U.S. 632 (2016). ECF No. 140 at 2. In citing *Ross*, Altheide argues that his grievance process was stonewalled and not available to him, so his Eighth Amendment claim must be granted on summary judgment. A review of the operative complaint (ECF No. 23) shows that Altheide did not allege this under his first claim. Even when liberally construing his pro se pleading, the Ninth Circuit does not permit a plaintiff to transform a case at summary judgment by introducing a wholly new theory premised on facts never alleged in the complaint. As the Ninth Circuit panel recently explained in *Hartzell v. Marana Unified Sch. Dist.*, "[a]fter having focused on one theory in [his] complaint and during discovery, [a plaintiff] cannot turn around and surprise the defendant at the summary judgment stage with a completely different theory." *See* 130 F.4th 722, 744 (9th Cir. 2025) (cleaned up); *see also Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006) (finding that allegations in a complaint must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests). This principle still applies even when the new theory arises under the same statutory framework because pleadings must still provide fair notice on the factual basis of the claim being asserted. So the court will not consider nor address this new theory raised for the first time in his summary judgment motion.

powerful that no reasonable jury would be free to disbelieve it." *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (cleaned up).[6] Altheide's motion does not explain how the exhibits demonstrate that he has met the elements of his claim so there is no genuine issue of material fact remaining. Stated otherwise, he has not met his burden demonstrating that no reasonable jury could rule against him. Accordingly, his motion for summary judgment is denied.

**B. The defendants' cross-motion for summary judgment (ECF No. 151) is granted.**

The defendants move for summary judgment pursuant to FRCP 56(f)(1), arguing that Altheide failed to properly exhaust his administrative remedies on his excessive force and intentional deprivation of property claims and because the defendants are entitled to qualified immunity on all three claims. ECF No. 151. The defendants also argue that Altheide fails to meet his burden for summary judgment as to each of his claims. *Id.* at 9–12.

In reply, Altheide essentially argues that while he did not exhaust his administrative remedies, these remedies were effectively unavailable. ECF No. 153. As to his first claim, Altheide argues that he grieved the matter and proceeded to the second level, which is the first level per AR 740 because forty-five days had expired. *Id.* at 1–2. Altheide asserts that as to his first claim, because the grievances were unavailable, they were a "dead end." *Id.* at 2 (citing *Ross*, 578 U.S. at 643). Although Altheide's arguments are difficult to discern, he also appears to assert that the $500.00 limit on grievances renders administrative exhaustion unavailable because his claims of $983.70 exceeds that amount. *Id.* at 2.

As to his second claim, Altheide does not directly address the defendants' administrative exhaustion argument, rather, Altheide asserts that there is "no material evidence [that] proves AR 617.01(d) mandates sick call kite will be filed." ECF No. 153 at 4. But Altheide does not assert that he properly exhausted his administrative remedies nor that such remedies were unavailable

---

[6] In his motion, Altheide asserts that summary judgment must be granted as to his Fourteenth Amendment claim asserting deprivation of his due process rights. Altheide references "NRS 209.369(3)(b)" and "NRS 209. 246(1)(b)(1–2)" without providing any legal authority to support why summary judgment should be granted as to his second claim for relief. Simply naming a statute is not enough and does not constitute points and authorities.

to him as it relates to his second claim. As to his third claim, Altheide asserts "grievance 200631 49771 exhausted." *Id.* at 4. Altheide further argues that grievance 20063149768 was exhausted. *Id.*

I first address arguments related to failure to exhaust administrative remedies and find that indeed, in violation of the PLRA, Altheide failed to exhaust his administrative remedies as to his first two claims, so the defendants' cross-motion is granted.[7] Further, because the defendants are entitled to qualified immunity as to Altheide's due process segregation claim, I also grant the defendants' cross-motion as to his third claim.

### *1. Altheide failed to exhaust his administrative remedies as to grievances 2006-31-44490, 2006-31-48105, 2006-31-53802.*

To exhaust administrative remedies within the NDOC, inmates must follow the procedures outlined in AR 740, and they must complete three levels of grievance: informal, first, and second. *See* AR 740.08–.10.[8] Generally, inmates must first file an informal grievance within six months of the action giving rise to a medical claim. AR 740.08(4)(A); *Jackson v. Russell*, 2025 U.S. Dist. LEXIS 5058, at *5 (D. Nev. Jan. 8, 2025); AR 740, Defs.' Ex. G, ECF No. 151-7 at 11. The prison has 45 days to respond to that informal grievance. AR 740.08(12). If the prison denies the informal grievance, the inmate has five days after the receipt of the denial to proceed to the next grievance level. AR 740.08(12)(A). The inmate can then file a first-level grievance, to which the prison has 45 days to respond. AR 740.09(5). If the inmate receives another denial, he has five days to file an appeal to proceed to his second-level grievance. AR 740.09(5)(A). In short, after each denial, the inmate must file an appeal to proceed to his next-level grievance within five days to exhaust the facility's administrative procedures. *Jackson*, 2025 U.S. Dist. LEXIS 5058, at *5.

[7] Because I find that Altheide's claims are barred by the PLRA, I do not address the remaining arguments related to whether there is a material dispute of fact.
[8] *See also* AR 740, Defs' Ex. G, ECF No. 151-7 at 11–15.

Here, Altheide failed to exhaust his administrative remedies as to his excessive force grievances[9] (2006-31-44490 and 2006-31-48105) and his deprivation of property grievance (2006-31-53802), which give rise to claims one and two. For both claims, after his grievances were rejected at the informal grievance level, Altheide failed to follow the guidance provided in the rejection notice, and the record indicates that he did not grieve to the next level. *See generally* ECF No. 151-5.[10]

While the court may waive the PLRA mandatory exhaustion requirement when there is a "genuine dispute that the grievance procedure was effectively unavailable," Altheide has not shown such unavailability. *See Rodriguez v. Cain*, 2022 U.S. Dist. LEXIS 89323, at *16 (D. Or. May 17, 2022) (citation omitted). Rather, Altheide conclusively argues that his administrative remedies were effectively rendered unavailable because any relief through the grievance process would have been limited to $500. ECF No. 153 at 2. But this alone is insufficient to find that administrative remedies were unavailable; this is a disagreement with the monetary limit. *See Miller v. Daniels*, 2025 U.S. Dist. LEXIS 184088, at *9 (D. Nev. Sep. 19, 2025) (explaining that the plaintiff's administrative remedies were available even when his grievances were rejected for demanding more than $500 and finding that the plaintiff failed to exhaust his administrative remedies).

Because I find that Altheide's administrative remedies were available to him, and that he failed to follow the procedures to cure his grievances, he failed to exhaust his administrative remedies, so the defendants' cross motion as to Altheide's excessive force and intentional deprivation of property claims is granted.

---

[9] As to his first claim, Altheide argues that he grieved the matter and proceeded to the second level which is the first level per AR 740 because forty-five days had expired. ECF No. 153 at 1–2. But the record does not support Altheide's position—that is, it does not show that he grieved grievances 2006-31-44490 and 2006-31-48105 to the next level. *See* ECF No. 151-5.

[10] But this is in stark contrast to Altheide's due process segregation claim where Altheide filed multiple grievances and appealed to the next level. *See* ECF No. 151-5.

### 2. *The defendants enjoy qualified immunity as to Altheide's due process segregation claim because Altheide has not shown that their conduct violated a clearly established right.*

Qualified immunity shields government officials "from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "A government official's conduct violates clearly established law when, at the time of the challenged conduct, the contour of a right [is] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 741 (cleaned up). The burden of showing that the right at issue was clearly established at the time of the incident falls on the plaintiff. *See Robinson v. York*, 566 F.3d 817, 826 (9th Cir. 2009).

"If the law did not put the [government actor] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The central dispositive inquiry for finding a right "clearly established" is "whether it would be clear to a reasonable [government actor] that his conduct was unlawful in the situation he confronted." *See id.*

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016) (quoting *Taylor v. Barkes*, 575 U.S. 822, 825 (2015)). A defendant is entitled to qualified immunity when no precedent squarely governs the facts, meaning that the court cannot say that only someone plainly incompetent or who knowingly violates the law would have acted as the official did. *Hamby*, 821 F.3d at 1091. The Ninth Circuit recently held that "the 'contours' of right must be 'sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *DeFrancesco v. Robbins*, 136 F. 4th 933, 939 (9th Cir. 2025) (citations omitted).

The defendants assert that they are entitled to qualified immunity because the evidence sufficiently demonstrates a routine amount of due process hearings for Altheide while he was in

segregation. ECF No. 151 at 21. The defendants further argue that although Altheide is upset about the amount of time it took to receive the initial due process hearing, the hearing was provided within a reasonable time, and it was then followed by periodic reviews occurring every month or twice a month. *Id.* The defendants also argue that even if the court finds that there may be a question as to whether a constitutional violation occurred, they are still entitled to qualified immunity because there is no case law that would have put the defendants on clear notice that Altheide's constitutional rights were violated. ECF No. 151 at 21, 23.

In reply, and without citing points and authorities in support thereof, Altheide argues that the defendants qualified immunity argument is frivolous and must be denied as all rights of the plaintiff were clearly established by "statute and regulations which governs the respondents lawful actions" (cleaned up). ECF No. 153 at 6. Altheide conclusively argues that the defendants were "acting in spite of established doctrine and in doing so violated [his] rights." *Id.*

Altheide's primary argument related to his due process segregation claim is based on the requirement that an inmate be provided a timely discipline hearing; specifically, which per NDOC regulations, needs to be conducted after 15 days of the filing of the incident report.[11] ECF No. 23 at 7. Altheide further argues that his administrative segregation was only supposed to be temporary. ECF No. 153 at 5. To support his claim against the defendants' cross motion, Altheide argues that there is no material evidence that disputes that the three-person panel of HDSP's failed AR 507's three-day mandate.[12] *Id.* at 4.

Because I find that the defendants have met their initial burden demonstrating the absence of any genuine issue of material fact, that is, Altheide received due process as it relates to his administrative segregation, the burden shifts to Altheide to present specific facts that show there to be a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e); *Norsworthy*, 2025 U.S. Dist. LEXIS 114468, at *6. Altheide fails to meet his burden. When reviewing Altheide's

---

[11] *See* AR 707.1, Pl.'s Ex. 10, ECF No. 140-1 at 89–127; *See* OP 507, Pl.'s Ex. 13, ECF No. 140-1 at 133–141.
[12] *See* ECF No. 140-1 at 133–141.

argument in the light most favorable to him, it reveals he was provided a due process hearing, albeit untimely, and continuous review hearings and responses to his grievances. *See* ECF No. 151-5. Further, in response to his grievances, NDOC explained to Altheide multiple times that while the defendants recognized his mental health challenges, he was in administrative segregation due to his High-Risk Prisoner status and safety concerns, pursuant to AR 507. *See, e.g.*, ECF No. 151-5 at 57.

The dispositive question here is whether the defendants, **on these facts**, should have known that what they did violated the Eighth Amendment. I find that they did not. And Altheide failed to point to any sufficiently similar case that could suggest that the defendants here could of or should have known, so the defendants are entitled to qualified immunity. Accordingly, their cross-motion for summary judgment as to Altheide's due process segregation claim (claim III) is granted.

**Conclusion**

IT IS HEREBY ORDERED that Altheide's motion for summary judgment **[ECF No. 140] is DENIED.**

IT IS FURTHER ORDERED that the defendants' cross-motion for summary judgment **[ECF No. 151] is GRANTED.**

IT IS FURTHER ORDERED that Altheide's motion for preliminary injunction **[ECF No. 147]** and motion for a hearing **[ECF No. 156] are DENIED as moot.**

The Clerk of the Court is kindly directed to enter judgment in favor of the defendants, and to close this case.

Dated: August 31, 2026

Cristina D. Silva
United States District Judge